# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

**JACOB HEATH VAN SLYKE, #189698**                                     **PLAINTIFF**

**v.**                                                 **CAUSE NO. 1:17CV164-LG-RHW**

**PEARL RIVER COUNTY, JULIE
FLOWERS, COREY MATAYA, DAVID
ALISON, SHANE TUCKER, OFFICER
KEENUM, OFFICER DEVIN, HEATH
WAYNE, OFFICER TYNESNIA,
TERRY POE, NURSE BRI, NURSE
BUDDY, NURSE JESSIE, BRAD
SHAW, OFFICER MITCH, LIZ
BARTON, ROY D'ARCANGELO, JR.,
NURSE ROBIN, DR. GRAYSON, and
DR. MONTGOMERY**                                                      **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER OF PARTIAL DISMISSAL

This case is before the Court *sua sponte*. *Pro se* Plaintiff Jacob Heath Van Slyke is incarcerated at the Pearl River County Jail, and he brings this 42 U.S.C. § 1983 action for damages and injunctive relief. The Court has considered and liberally construed the pleadings. As set forth below, Defendant Shane Tucker is dismissed.

### FACTS AND PROCEDURAL HISTORY

Van Slyke alleges that he has been held at the Pearl River County Jail since his arrest on March 29, 2016. He has since been convicted of a misdemeanor and is still awaiting trial on five felony counts. He sues Pearl River County, various members of its Sheriff's Department, and medical personnel employed at the jail.

Generally, Van Slyke alleges excessive force; retaliation; confiscation of property; religious claims; denial of recreation, medical and mental health treatment, proper hygiene, legal assistance, and speedy trial; and censorship of his outgoing legal mail.

First, Van Slyke alleges instances of excessive force involving a restraint chair and later being shoved by an officer. Van Slyke contends that on September 30, 2016, Defendant Sergeant Terry Poe placed him in a restraint chair in retaliation for attempting to file grievances, including one for medical treatment of a staph infection in his armpit. (Resp. [13] at 2); (Compl. at 4-5). He claims that he was placed in handcuffs "so tight . . . that [his] wrist began to bleed, the officers would yank the handcuffs jerking [his] wrist . . . and shackle [his] hands to chairs behind [him] that was not part of the restraint chair." *Id.* at 4. While in the chair, he claims that his arms were spread out as if he were being crucified, his wound worsened, his fingers turned purple, and Defendant Officer Keenum allegedly choked him and cut his wrists by "snatching the handcuffs" while he was shackled. (Resp. [13] at 2); (2d Am. Compl. [9] at 6); (Compl. at 4-5). Van Slyke further maintains that the restraint "chair had other inmates['] urin[e] and vomit on it." (Resp. [13] at 2). He accuses Defendants Officers Devin, Heath Wayne, and Tynesnia of also being present and subjecting him to the restraint chair. *Id.*

Then, on May 30, 2017, Van Slyke contends that Defendant Sergeant Liz Barton repeatedly shoved him in his back which "was already hurt before this

2

incident" and had also been the subject of medical grievances. (Am. Compl. [8]). Van Slyke further alleges that the force occurred in front of Defendants Captain Corey Mataya, Sergeant Poe, Officer Mitch, and Officer Brad Shaw. (2d Am. Compl. [9] at 5-6). This incident happened, allegedly, because Barton was angry that Plaintiff had filed a grievance on her. *Id.* at 5.

Besides the alleged acts of retaliation mentioned above, Van Slyke contends that Captain Mataya has kept him on solitary lockdown, denied him canteen, recreation, visitation, and phone privileges in retaliation for filing this and a state lawsuit, challenging the conditions of his confinement, and for writing grievances. *Id.* at 1-2, 6. According to the pleadings, Defendant Roy D'Arcangelo, Jr.—the jail's mailroom clerk—informs Mataya about the contents of Van Slyke's mail, "causing more [h]arassment & retaliation." *Id.* at 3. He claims that, on May 30, 2017, Sergeant Barton gave him two weeks on lockdown, without notice or a hearing, for filing a grievance on her. *Id.* at 5. He accuses D'Arcangelo, who is also alleged to be the canteen and accounts officer, of charging his inmate account in retaliation for complaining about the handling of his mail and missing canteen items. (3d Am. Compl. [10] at 2-3).

Next, Van Slyke alleges that he was deprived of various property. He claims that, after being placed in the restraint chair, Captain Mataya ordered officers to take his property away from him, including his Bible, in which he documented "multiple inc[i]dents of physical abuse." (Compl. at 4-5). Besides the Bible,

Captain Mataya had ordered them, allegedly, to take away Plaintiff's blankets, hygiene [items], tooth brush, mail, and pens. *Id.* at 5. He allegedly wrote grievances concerning the matter to both Mataya and Major Flowers. *Id.* at 4. Van Slyke also claims that $100 was taken out of his inmate account as a charge for a damaged mattress, even though it was allegedly that way before Plaintiff ever received it. (2d Am. Compl. Ex. C [9-3] at 7). He contends that, even though Officer Clay verified to both Major Flowers and Captain Mataya that the mattress was not impaired by Van Slyke, they never returned his money to him. *Id.*

Related to the property claim, is a religious claim, based on the alleged taking of Van Slyke's Bible. Major Flowers was allegedly aware that the Bible had been taken. (Compl. at 4). Besides the loss of his Bible, he claims that Flowers and Captain Mataya have denied him religious services and access to a Chaplain. (2d Am. Compl. [9] at 3, 6-7).

Next, Van Slyke accuses Major Flowers, Captain Mataya, and Sergeant Barton of denying him recreational exercise during the two times he was in lockdown. (Resp. [13] at 2-3); (Compl. at 5). Van Slyke contends that he went 35 days or so without recreational exercise, during his periods on segregation. (Resp. [13] at 2); (Am. Compl. [8]).

As mentioned previously, part of the reason Van Slyke maintains he was on segregation was for complaining about alleged denials of medical treatment. Specifically, he accuses Nurse Robin and Dr. Grayson of ignoring his food allergy to

4

a red sauce for over 30 days. (Resp. [13] at 3). As a result, Van Slyke allegedly suffered hemorrhoids, diarrhea, weight loss, and an inflamed prostate, and he claims that he had to choose between either suffering these symptoms or not eating. *Id.*; (3d Am. Compl. [10] at 1); (Compl. at 5). Nurses Bri and Buddy are next accused of delaying treatment for the staph infection for over a week. (Resp. [13] at 2). As a result, Van Slyke claims his "arm became red and burned . . . and [he] could not sleep due to pain in [his] arm and side." *Id.* He also alleges that Nurses Bri and Jessie did not treat him for bumps on his genitals for over a year, causing the bumps to spread. *Id.*

Van Slyke also alleges that he has been denied treatment for his mental health. (3d Am. Compl. [10] at 2). Specifically, he contends that he suffers from "mental problems developed at this jail from isolation [and] har[r]assment" as well as depression, paranoia, sleep deprivation, "lack of sense of self [and] peripheral vision hallucinations," anger, stress, anxiety, and homicidal thoughts. (Resp. [13] at 3-4); (3d Am. Compl. [10] at 2). He claims that the jail's social worker has referred him to Defendant Dr. Montgomery for treatment, but he will not see Plaintiff. *Id.*

Next, Van Slyke alleges that he was denied legal assistance and access to courts in both his criminal cases, which includes a case charging five felonies, and one charging a misdemeanor. He claims he went 15 months without counsel being appointed in his felony case, was without counsel in the misdemeanor case, and was

5

not allowed to use the law library to prepare a defense. (Resp. [13] at 3-4); (2d Am. Compl. Ex. C [9-3] at 7); (Am. Compl. [8]). He also claims he is not presently allowed access to the law library to appeal his misdemeanor conviction. (Resp. [13] at 4). Additionally, Van Slyke contends D'Arcangelo has prevented his letters going out to the Public Defender's office. *Id.* at 3. Van Slyke alleges he was unable to file motions with the State court, "held on void indictments and unable to bond or speak with attorney or contact one [and] never had a preliminary hearing" or court appearance for thirteen months. *Id.*

Finally, related to his claims of denial of access, are Van Slyke's allegation that Officer D'Arcangelo is censoring his legal incoming and outgoing mail. Besides the instances alleged above, Van Slyke accuses him of preventing a notice of the misdemeanor trial date from reaching Van Slyke. (3d Am. Compl. [10] at 2).

Van Slyke brings this action, pursuant to § 1983, alleging excessive force against Defendants Pearl River County, Sheriff David Alison, Sergeant Poe, Officers Keenum, Devin, Wayne, and Tynesnia, Sergeant Barton, Captain Mataya, and Officers Mitch and Shaw. Van Slyke asserts retaliation claims against Poe, Barton, Mataya, and Officer D'Arcangelo. Van Slyke alleges a deprivation of property, denial of his right to practice his religion, and a denial of lack of proper hygiene on lockdown against Major Flowers and Mataya. These two, along with Barton, are also accused of denying Van Slyke recreation. He sues Nurses Robin, Bri, Buddy, and Jessie and Dr. Grayson for denial of medical care. The denial of

6

mental health treatment claims is brought against Dr. Montgomery. Van Slyke brings claims for denial of legal assistance and access to courts against Pearl River County and D'Arcangelo. Van Slyke appears to also accuse the County of denying him a speedy trial. Finally, he accuses D'Arcangelo of censoring Plaintiff's outgoing and incoming legal mail. Plaintiff lastly sues the County, Alison, and Defendant Shane Tucker, because they are supervisors, "responsible for the actions of their employees . . . because the[re] was no further remedy due to them not responding or making sure their employees do their jobs correctly." (Resp. [13] at 1). Nevertheless, Van Slyke alleges that there is no way for Tucker to receive an inmate grievance. (2d Resp. [16] at 1). Van Slyke seeks damages and injunctive relief.

## DISCUSSION

The Prison Litigation Reform Act of 1996, applies to prisoners proceeding *in forma pauperis* in this Court. The statute provides in pertinent part that, "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). The statute "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Denton v.*

7

*Hernandez*, 504 U.S. 25, 32 (1992). "[I]n an action proceeding under [28 U.S.C. § 1915, a federal court] may consider, sua sponte, affirmative defenses that are apparent from the record even where they have not been addressed or raised." *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir. 1990). "Significantly, the court is authorized to test the proceeding for frivolousness or maliciousness even before service of process or before the filing of the answer." *Id.* The Court has permitted Van Slyke to proceed *in forma pauperis* in this action. His Complaint is subject to *sua sponte* dismissal under § 1915.

Among others, Van Slyke sues Tucker, under § 1983, on a theory of *respondeat superior* and for failing to respond to any of Van Slyke's jail grievances, which he admits that Tucker never received.

"There is no vicarious or *respondeat superior* liability of supervisors under section 1983." *Rios v. City of Del Rio*, 444 F.3d 417, 425 (5th Cir. 2006). The supervisor must either be personally involved in the violation or otherwise have caused the violation. *Id.* To the extent that Tucker is sued merely because he is a supervisor, this is insufficient to state a claim against him under § 1983.

As for the claim that Tucker did not respond to any grievances, Van Slyke admits that Tucker did not receive any inmate grievances. There being no basis in fact, this claim will be dismissed as frivolous.

**IT IS THEREFORE ORDERED AND ADJUDGED** that, for the reasons stated above, the claims against Defendant Shane Tucker should be, and are

hereby, **DISMISSED WITH PREJUDICE** as frivolous and for failure to state a claim. The remainder of the case shall proceed.

**SO ORDERED AND ADJUDGED** this the 15th day of November, 2017.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE