IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**JACOB HEATH VANSLYKE  # 189698**                                                        **PLAINTIFF**

**VS.**                                                                 **CIVIL ACTION: 1:17cv164-LG-RHW**

**PEARL RIVER COUNTY,** *et al*.                                                    **DEFENDANTS**

### REPORT AND RECOMMENDATION

Before the Court are [38] and [64] motions for summary judgment filed respectively on February 9, 2018 and May 23, 2018, by Defendant Robin West in this *pro se* prisoner civil rights lawsuit.  Plaintiff has filed no response to either motion.

Facts and Procedural History

Jacob Heath VanSlyke is an inmate of the Mississippi Department of Corrections (MDOC), currently incarcerated at Wilkinson County Correctional Facility (WCCF).  He is serving two twelve-year sentences imposed March 20, 2014 for convictions of violating the Mississippi RICO Act and burglary of an unoccupied dwelling, and a ten-year habitual offender sentence imposed August 28, 2017 for felon in possession of a weapon, following his guilty plea to that charge.  [64-4, pp. 7-9]   All three convictions[1] are from Pearl River County. The MDOC web site shows VanSlyke entered the system April 24, 2014, and his tentative release date is April 22, 2042.

On May 30, 2017, VanSlyke filed suit against Pearl River County and four individual defendants,[2] complaining of conditions at Pearl River County Jail (PRCJ) where he was

---

[1]The MDOC web site shows VanSlyke is serving four sentences, but identifies only three of the convictions.  His entry into the MDOC system is shown as April 24, 2014.

[2]David Alison, Julie Flowers, Corey Mataya and Shane Tucker.  On November 15, 2017, the Court dismissed the claims against Tucker as frivolous and for failure to state a claim.  [19]

incarcerated pending trial. He first mentioned "Nurse Robin" in response to an August 10, 2017 Order requiring him to provide more information regarding his claims. [12], [13] The response led to the addition of fifteen new defendants, including "Robin Unknown" (later identified as Robin West), by order entered August 25, 2017. [14] Pursuant to VanSlyke's request in the omnibus hearing, Defendants Brad Shaw and Mitch Garriga were dismissed on April 5, 2018. [64-4, p. 42], [54] VanSlyke alleges the various defendants used excessive force, provided constitutionally inadequate medical care, confiscated his property, hindered his access to courts, retaliated against him, violated his due process rights and right to practice his religion, and denied him the opportunity to exercise when he was in lockdown.

Robin West is currently employed by Health Ally, LLC, as the Health Services Administrator at PRCJ, and was previously employed in the same capacity by Health Ally's predecessor, Health Assurance, LLC. [38-1], [64-1] In his pleadings, VanSlyke generally alleges he was denied adequate medical care during his incarceration at PRCJ, however in the omnibus hearing, he testified his only claim against West is that for over 60 days she did not arrange for red sauce to be kept off his meal tray. VanSlyke testified his claim against West had nothing to do with medical treatment he received, but to the extent that his general claims of constitutionally inadequate medical care might be deemed directed at her, West asserts VanSlyke cannot prove she was deliberately indifferent to his serious medical needs. West urges she is entitled to summary judgment because VanSlyke cannot establish elements essential to his claims against her. In addition to her affidavits, West has presented VanSlyke's medical and mental health records [64-2],[64-3], and the transcript of the omnibus hearing of October 19, 2017 in support of her motions. [64-4] As previously stated, VanSlyke filed no response to either of West's motions.

VanSlyke's largely conclusory medical allegations include complaints that the medical department failed to respond to his medical requests; nobody treated injuries caused by shackles, a boil under his left arm and staph infection, bumps on his penis, or his back pain; no one responded to his complaint that the red sauce on food upset his stomach, inflamed his prostate and made him lose weight; and no one responded to his request for mental health care. [1, p. 5], [13, pp. 1-4], [10, pp. 1-2], [8, p. 1], [16, p. 2], [17, p. 1]

According to his testimony, VanSlyke was in the Pearl River County Jail (PRCJ) from March 30-April 12, 2016, from August 13-October 12, 2016, and from April 13-November 9, 2017. He was in MDOC custody during the intervening periods. The complaints presented in this lawsuit began in September 2016 when the boil and staph infection developed in his armpit. VanSlyke testified it took about six days for him to get to medical where he received treatment including lancing the boil and antibiotics, and the boil went away. [64-2, pp. 10-12, 20-21] His medical records show nurses noted a red inflamed bump under his left arm September 14 and 15, 2016 and gave him Bactrim. Nurse Carr lanced and bandaged the boil September 16, 2016 and gave him more Bactrim. He was last treated for the boil on September 18, 2016, and continued on Bactrim until at least September 20, 2016. [64-2, pp. 4-8] The records reflect no further complaint about the boil, and VanSlyke was not at PRJC from October 12, 2016-April 13, 2017.

VanSlyke testified he had bumps on his penis in March 2016 but he did not go to medical for the condition at that time. He got medical attention for the bumps at MDOC, and was treated with medicine for them upon his return to PRCJ. [64-4, pp. 18-19] He saw Dr. Grayson for the genital warts three times at PRCJ, and was prescribed medicine. VanSlyke contends jail medical personnel did not follow the doctor's orders. [64-4, p. 27] According to his medical records, VanSlyke complained of a bump in his private area on April 27, 2017 which he reportedly had

for a month.  Nurse Harvey saw him and referred him to the doctor for evaluation.  Medical records dated April 29, 2017 noted he had small "warts" on his penis and he was prescribed medication.  [64-2, pp. 17-18]  On May 31, 2017, VanSlyke stated the wart was still there, and the medicine had none nothing.  [64-2, p. 24]  On June 3, 2017, the doctor noted the penile warts were gone except for one.  [64-2, p. 26]  VanSlyke complained on July 17, 2017 that the problem remained, the warts had not been treated as directed and had multiplied.  On August 16, 2017, VanSlyke requested to have his toenails clipped and to "see dr to be given treatment again for bumps in private region that I've already been charged and treated 3 times for that have multiplied and not gone away..." [64-2, p. 40]  His August 19, 2017 medical encounter record indicates he has small genital warts, improved with medication but not gone, and he was again prescribed medication for use twice a week for four weeks.  [64-2, p. 41]  Two days later he complained he had missed two days of the treatment recommended by Dr. Grayson on August 19.  The nurse explained the doctor's orders to him the following day.  [64-2, p. 42]  His records contain no further complaints of the warts.

      VanSlyke testified his back was hurt when an officer shoved him in March 2017; he stated she shoved him four or five times from the front, though not enough to knock him down, and when he turned away she shoved him twice "real hard" in the back.  [64-4, pp. 13-16]  His medical records show on April 14, 2017 he complained of his ribs, thighs and back hurting and stated he needed to clip his toenails.  [64-2, p. 14]  He stated on May 27, 2017 that the top left part of his back hurts when he lies on his back, and when he turns to "make it pop, it's relieved for almost 5 minutes then always right back to hurting..."  He was given Icy-Hot muscle rub on May 30, 2017.  [64-2, p. 23]  VanSlyke filed a grievance on June 2, 2017 claiming he had sent four requests to medical regarding back pain, and requesting to see the doctor.  [64-2, p. 25]  On

June 10, 14, 15 and 17, 2017, he complained his back hurt. Medical staff noted on June 19, 2017 that he was walking around without difficulty, talking and laughing with other inmates and in no distress. [64-2, pp. 28, 30-31, 33] On July 19, 2017, the nurse noted he was last seen for back complaint on June 17, 2017, that there was "no further request in chart since that date," and he would be referred to the doctor for his back pain. [64-2, p. 38] The medical records contain no further complaints of back pain.

With respect to VanSlyke's complaint that no one treated injuries caused by shackles, the medical records show he complained of only two such injuries at PRCJ. On September 18, 2016, he reported numbness in his right thumb for four days "due to handcuffs being put on backwards and to (*sic*) tight." He was seen the same day and found to have no outward signs of trauma to the right thumb. [64-2, p. 7] On September 24, 2016, in addition to complaints of his head and stomach hurting, he stated he had "open wounds" on his wrist. He was treated with an antibiotic and bandaid applied to his wrist. [64-2, p. 9]

VanSlyke complained frequently about stomach problems. On September 24, 2016 he stated his stomach hurt, but when he was seen in medical, he had "no more complaint." [64-2, p. 9] On October 2, 2016 he complained of constipation, and was given milk of magnesia. [64-2, p. 10] On April 17, 2017, he stated he let booking know when he arrived three days earlier that he was on a high protein diet, and wanted to resume that diet; medical responded the same day that the doctor had to order a high protein tray, and West submitted a request for a high protein tray. [64-2, pp. 14-15] On April 25, 2017, he complained the meat and sandwich pack on the trays and the red sauce upset his stomach so he had stopped eating it and was going hungry and

losing weight.[3] West responded on April 28, 2017, reminding VanSlyke he told her at intake he had not been eating at the Greene County facility due to perceived unfair disciplinary actions. His tray was not changed at that time. [64-1, p. 3], [64-2, p. 16]

On May 18 and 19, 2017, he complained of red sauce being on his dinner trays resulting in upset stomach, diarrhea, gas, frequent elimination and a hemorrhoid. [64-2, pp. 21-22] He was given Zantac. He again complained on May 27 and 31, 2017, stating the Zantac was not working. He was started on Prilosec. [64-2, pp. 23-24] On June 3, 2017, the doctor noted his GI symptoms were "mostly related to certain foods," he was gaining weight -162 pounds at this visit, and his lab and exam were okay. [64-2, p. 26] VanSlyke complained about the red sauce on June 9, 10 and 14-16, 2017, and asked that it be taken off his trays, stating his stomach was upset and neither Zantac nor Prilosec worked. Ronitidine was added to his Zantac and Prilosec medications on June 15, 2017. [64-2, pp. 27-31] When he again complained on June 16, West advised him to give the medicines time to work. [64-1, p. 5], [64-2, p. 32] He complained on June 18, 20 and 23, 2017 about red sauce on his tray, on spaghetti and in red beans. He was still on medications, and was told on June 19, 2017 that he would be referred to the doctor. Nurse Schmidt requested no red sauce on his tray on June 23, 2017. [64-2, pp. 34-36] The medical records contain no further stomach complaints.

<u>Summary Judgment Standard</u>

Rule 56, FED.R.CIV.P., requires that a motion for summary judgment be granted "if the movant shows there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." A material fact is one that might affect the outcome of the suit

---

[3] This is the first reported red sauce problem seen in the records. VanSlyke weighed 155 pounds at intake; 156.5 pounds on April 29, 2017; 159 pounds on May 10, 2017; and 162 pounds on June 3, 2017. [64-2, pp. 18-19, 26], [64-1, p. 4]

under governing law; a genuine dispute exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). On a motion for summary judgment, the Court views the evidence and draws reasonable inferences most favorably to the non-moving party. *Abarca v. Metropolitan Transit Authority*, 404 F.3d 938, 940 (5th Cir. 2005). The party with the burden of proof at trial bears the burden of proof at the summary judgment stage. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).

One seeking summary judgment must identify those portions of pleadings and discovery on file and any affidavits which he believes demonstrate the absence of a genuine issue of material fact. *Id.*, at 325. Once the movant carries his burden, the burden shifts to the non-movant to show summary judgment should not be granted. The non-movant may not rest upon mere allegations or denials, but must set forth specific facts showing there is a genuine issue for trial by either submitting opposing evidentiary documents or referring to evidentiary documents already in the record which demonstrate the existence of a genuine issue of material fact. *Celotex*, 477 U.S. at 324-325; *Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir. 1991); *Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir. 1986) (non-movant "must counter factual allegations by the moving party with specific, factual disputes; mere general allegations are not a sufficient response."). Conclusory allegations, unsubstantiated assertions or the presence of a scintilla of evidence, will not suffice to create a real controversy regarding material facts. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990); *Hopper v. Frank*, 16 F.3d 92, 97-98 (5th Cir. 1994); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994).

<u>Law and Analysis</u>

The first inquiry in a § 1983 civil rights action is whether the complainant has been deprived of a federally protected right; there can be no relief under 42 U.S.C. § 1983 if there has

been no deprivation of a federally protected civil right. *Baker v. McCollan*, 443 U.S. 137, 140 (1979). Actionable conduct under § 1983 requires that a plaintiff show he has been deprived of a right secured by the Constitution or federal law, by a person acting under color of state law. *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 155 (1978). "A section 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir.), *cert. denied*, 498 U.S. 908 (1990), (citations omitted). Conclusory allegations are insufficient. *Jaquez v. Procunier,* 801 F.2d 789, 793 (5th Cir. 1986). Negligent action of a state official "which results in unintended harm to life, liberty or property does not implicate the Due Process Clause," and is insufficient for a § 1983 claim. *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995). The plaintiff must show the alleged constitutional or statutory deprivation was intentional or due to deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994).

Deliberate indifference to serious medical needs

A prisoner is entitled to medical care during his incarceration, but he has no constitutional right to the "best" medical treatment available. *Irby v. Cole*, 2006 WL 2827551, at *7 (S.D. Miss. Sept. 25, 2006) (citing *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978)). To state a cognizable Eighth Amendment claim for denial of medical care, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference "is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). To establish a constitutional violation for inadequate medical care against West, VanSlyke bore the burden of proving: (1) West knew VanSlyke faced a substantial risk of serious bodily harm, and (2) she disregarded that risk by failing to take reasonable measures to abate it. *Id.*; *see also*, *Johnson v.*

*Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985) (plaintiff must show officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs"). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert*, 463 F.3d at 346.

West cannot be held liable unless VanSlyke shows she knew of and disregarded an excessive risk to his health and that her deliberate indifference to his serious medical needs unnecessarily and wantonly inflicted harm on him. *Id.*; *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999). According to VanSlyke's medical records and West's affidavits, of the over 40 medical requests/treatment notes in VanSlyke's medical file, West saw him only four times: the first time when he requested a high protein diet, which she requested for him; the second time when he complained of stomach problems and losing weight and she reminded him of his statement at intake that he had not been eating at the prior facility; the third time when she gave him Icy-Hot muscle rub for his back; and the fourth, when he again complained of stomach problems and she told him to give his stomach medications time to work. The Fifth Circuit has held that "[medical records of sick calls, examinations, diagnoses and medications may rebut an inmate's allegations of deliberate indifference." *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 193-195 (5th Cir. 1993); *Bejaran v. Cruz*, 79 Fed.App'x 73, 74 (5th Cir. 2003). From the evidence submitted, as well as VanSlyke's own testimony that he was not making a claim against West with regard to his medical treatment, the undersigned finds West is entitled to summary judgment on VanSlyke's medical treatment claim.

The above discussion applies to the extent that VanSlyke's complaint against West about the red sauce may be deemed a medical claim, particularly in light of the fact that he was seen by medical personnel on numerous occasions, and prescribed at least three different medications between the complaint and Nurse Schmidt's June 23, 2017 request for no red sauce on his trays. The claim also fails if it is considered as one concerning the food VanSlyke was served. The Constitution requires only that prisoners be served food that provides adequate nutrition. *Logan v. Black*, 983 F.2d 1063 (5th Cir. 1993) (citing *Green v. Ferrell*, 801 F.2d 765, 770 (5th Cir. 1986)). *See also*, *Pittman v. Broadus*, 2009 WL 1663685, at *4 (S.D. Miss. June 15, 2009) and *Marshall v. Allison*, 2011 WL 601178, at *4 (S.D. Miss. Feb. 11, 2011) (holding frivolous conclusory, unsupported claims that jail food is served cold and portions were too small).

Furthermore, both West's affidavit and VanSlyke's medical records show he first complained to West about the red sauce only twice: on April 25, 2017 he claimed it upset his stomach and he was losing weight because it was on his food, and she reminded him he had told her at intake (when he weighed 155 pounds), that he had not been eating while he was at a Greene County facility before being returned to PRJC; and June 16, 2017 when she told him to give his medications time to work. In the interim, he had been seen frequently in the medical department, and prescribed at least three different medications for his stomach problems. The medical records also show that VanSlyke's weight steadily *increased* from the date of intake until June 3, 2017 when he weighed 162 pounds, and that on June 23, 2017 Nurse Schmidt requested no red sauce on his trays. [64-1, pp. 3-4], [64-2, pp. 16, 18-19, 26] The undersigned is of the opinion that VanSlyke has failed to meet his summary judgment burden to come forward with specific facts or evidence showing the existence of a genuine issue for trial regarding his claim(s) against Robin West.

**RECOMMENDATION**

Based upon the foregoing, the undersigned recommends that the summary judgment motions filed by Robin West be granted, and Plaintiff's complaint be dismissed as to West.

**NOTICE OF RIGHT TO APPEAL/OBJECT**

After being served a copy of a Report and Recommendation (R&R), a party has 14 days to serve on the other parties, submit to the assigned District Judge, and file with the clerk of court his written objections to the R&R. The objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. The District Court need not consider frivolous, conclusive, or general objections. Opposing parties have seven days after being served with objections, to serve and file a response or to notify the District Judge they do not intend to respond to the objections. Except on grounds of plain error, a party cannot attack on appeal any proposed factual finding or legal conclusion accepted by the District Court to which he did not timely file objections. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Signed, this the 25th day of July, 2018.

/s/ *Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE