# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

**JACOB HEATH VANSLYKE   # 189698**

                                              **PLAINTIFF**

**VS.**                                      **CIVIL ACTION: 1:17cv164-LG-RHW**

**PEARL RIVER COUNTY,** *et al***.**                               **DEFENDANTS**

## REPORT AND RECOMMENDATION

This *pro se* prisoner civil rights lawsuit is before the Court on [82] a motion for summary judgment filed September 28, 2018 by Defendants Pearl River County, Sheriff David Alison, Major Julie Flowers, Captain Corey Mataya, Sergeant Liz Barton, and Officers Heath Wayne, Roy D'Arcangelo, Jr., and Tanisha Burnett.   Movants assert they are entitled to summary judgment due to Plaintiff's failure to exhaust administrative remedies prior to filing suit, and his failure to allege a constitutional deprivation.   Plaintiff filed no response to the motion.[1]

### Facts and Procedural History

Jacob Heath VanSlyke, Mississippi Department of Corrections (MDOC) inmate # 189698, is serving four sentences totaling 20 years for Pearl River County convictions including violating the Mississippi RICO Act, burglary of an unoccupied dwelling, and felon in possession of a weapon.[2]   He was sentenced on the first two convictions March 20, 2014 and on the third, August 28, 2017.   His tentative release date is September 7, 2036.

---

[1] VanSlyke also filed no response to either of Robin West's motions [38] and [64] and no objection to the R&R [74] recommending West's dismissal; he filed no response to Dr. Montgomery's motion [67] and no objection to the R&R [81] recommending Montgomery's dismissal; he filed no response to Dr. Grayson's first motion [76], responded to Grayson's supplemental motion [93] stating only that he knew of no address for Grayson except the jail [94], and filed no objection to the R&R [95] recommending Grayson's dismissal.

[2] The MDOC web site identifies only three of VanSlyke's convictions.

When VanSlyke filed this lawsuit on May 30, 2017, he was incarcerated in the Lenoir-Rowell Criminal Justice Center (LRCJC), the Pearl River County jail, awaiting trial on the weapons charge. His original complaint named as Defendants Pearl River County, Alison, Flowers, Mataya and Shane Tucker. He later named 15 more defendants who were added to the lawsuit in August 2017. [12], [13] To date, the Court has dismissed the complaint as to six Defendants: the District Court dismissed the claims against Tucker on November 15, 2017 as frivolous and for failure to state a claim [19]; Brad Shaw and Mitch Garriga were dismissed pursuant to VanSlyke's request at the April 5, 2018 omnibus hearing [54]; Nurse Robin West and Dr. John Montgomery were dismissed on their respective summary judgment motions [74], [79], [81], [90], and the District Judge adopted the undersigned's Report and Recommendation and dismissed Dr. Wayne Grayson on June 27, 2019. [95], [98] Movants are eight of the remaining fourteen Defendants; the other six have purportedly been served with process,[3] but have neither answered nor appeared in the case.

VanSlyke generally alleges the various defendants violated his constitutional rights by using excessive force, providing constitutionally inadequate medical care, confiscating his property, hindering his access to courts, retaliating against him, and denying him due process, opportunity to practice his religion, and yard call/opportunity to exercise when he was in lockdown. He testified he was in LRCJC March 30-April 12 and August 13-October 12, 2016 (75 days total), and April 13-November 9, 2017 (211 days); he was in MDOC custody during the intervening periods. [82-1, pp. 7-9] The matters of which VanSlyke complains in this lawsuit began in September 2016 with a claim of excessive force against Defendants Poe and Keenum

---

[3] Returns indicate Terry Poe was personally served [37]; process was served on the mothers of Defendants Devin Magee and James Keenum [36], [34]; on the father of Nurse Jessie (Jessica Christina); on the sister of Nurse Bri (Breanna McCabe); and on Nurse West at the jail for Nurse Buddy (Raymond Harvey). [34]

who are not involved in the present motion.  With respect to the movants, VanSlyke alleges Sgt. Liz Barton used excessive force against him on May 30, 2017 by shoving him in the back which "was already hurt."  He claims this occurred in the presence of Captain Mataya, Sgt. Poe, and Officers Garriga and Shaw, and that Poe and Shaw also shoved him, but did not injure him. [82-1, pp. 13-17]  He also alleges Barton extended his time in lockdown without a hearing. [82-1, pp. 39, 43]  VanSlyke testified he was frequently placed in the restraint chair, sometimes because he "would act out," and sometimes by Tanisha Burnett who is also the person who took his personal property on orders of Capt. Mataya when VanSlyke was put in lockdown for fighting.  [82-1, pp. 28-32, 41-43]  He claims Officer D'Arcangelo failed to send mail and opened his incoming mail.  [82-2, p. 33]

At the screening/omnibus hearing, he testified he sued Flowers and Mataya because they ignored his grievances and denied his disciplinary appeals, Alison because he was in charge of the jail, and the County because it owned the jail.  [82-1, pp. 40-46, 50-51]  VanSlyke testified he could not remember the incident which involved Officer Heath Wayne.  [82-1, p. 41]  He makes general allegations of retaliation in disciplining him and putting him in lockdown, as well as deprivation of medical care, right to practice religion, recreation and legal assistance.  [82-1, p. 33-34, 19-20, 27]  And he claims his property was taken, his account was charged for damaging a mattress which he had not damaged [82-1, pp. 31, 36], a canteen order which had been held while he was in lockdown was missing a moon pie and some honey buns when he received it, and the things taken when he was placed in lockdown were not returned to him. [82-2, pp. 30-32, 35-36]

Relying on the hearing transcript, affidavits from Mataya and Barton, VanSlyke's substantial jail file, and the LRCJC inmate handbook, Defendants seek summary judgment on grounds including lack of personal involvement, failure to adequately plead a municipal liability claim or to exhaust administrative remedies before filing suit, and qualified immunity.

## Summary Judgment Standard

Summary judgment is required "if the movant shows there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." FED.R.CIV.P. 56. Material facts are those which affect the outcome of the suit under governing law; a genuine dispute exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). On a motion for summary judgment, the Court views the evidence and draws reasonable inferences most favorably to the non-moving party, but the burden of proof is on the party who has the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986); *Abarca v. Metropolitan Transit Authority,* 404 F.3d 938, 940 (5th Cir. 2005). Movants must identify those portions of pleadings and discovery on file and any affidavits which they believe demonstrate the absence of a genuine issue of material fact, then the non-movant must set forth specific facts showing there is a genuine issue for trial by either submitting opposing evidentiary documents or referring to evidentiary documents already in the record which demonstrate the existence of a genuine issue of material fact. *Celotex*, 477 U.S. at 324-325; *Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir. 1991); *Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir. 1986) (non-movant "must counter factual allegations by the moving party with specific, factual disputes; mere general allegations are not a sufficient response"). Conclusory allegations, unsubstantiated assertions or the presence of a scintilla of evidence, do not suffice to create a real controversy regarding

material facts. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990); *Hopper v. Frank*, 16 F.3d 92, 97-98 (5th Cir. 1994); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994).

## Law and Analysis

In an action under § 1983 a plaintiff must show he has been deprived of a right secured by the Constitution or federal law, by a person acting under color of state law. *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 155 (1978). The complaint must state "specific facts, not simply legal and constitutional conclusions," conclusory allegations are insufficient. *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir.), *cert. denied*, 498 U.S. 908 (1990); *Jaquez v. Procunier,* 801 F.2d 789, 793 (5th Cir. 1986). The plaintiff must show the alleged constitutional or statutory deprivation was intentional or due to deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994). "[T]he negligent act of a state official which results in unintended harm to life, liberty or property does not implicate the Due Process Clause," and is insufficient for a § 1983 claim. *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995) (citing *Daniels v. Williams*, 474 U.S. 327, 328-29 (1986).

Exhaustion of Administrative Remedies

The Prison Litigation Reform Act of 1995 (PLRA) requires that a prisoner exhaust administrative remedies before bringing a § 1983 action in federal court:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) (Supp. 2000). Exhaustion is required before an inmate brings an action with respect to prison conditions, regardless of the relief offered through administrative

procedures.  *Booth v. Churner*, 532 U.S. 731, 739 (2001).   The United States Supreme Court has explained that the PLRA's exhaustion requirement is mandatory and applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes.  See *Porter v. Nussle*, 534 U.S. 516, 532 (2002); see also *Jones v. Bock*, 549 U.S. 199, 204 (2007) (reaffirming that exhaustion is mandatory).  The Fifth Circuit Court of Appeals reiterated these principles in *Gonzales v. Seal*, 702 F.3d 785 (5th Cir. 2012), recognizing that "pre-filing exhaustion of prison grievance processes is mandatory."  *Id.* at 788.  Proper exhaustion is required and is not accomplished "by filing an untimely or otherwise procedurally defective administrative grievance or appeal."  *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006).  An inmate's grievance must be sufficiently specific to afford "officials a fair opportunity to address the problem that will later form the basis of the lawsuit."  *Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004).  "It is not enough to merely initiate the grievance process or to put prison officials on notice of a complaint; the grievance process must be carried through to its conclusion."  *Walker v. East Miss. Corr. Facility*, 2013 WL 4833901, *2 (S.D. Miss. Sept. 11, 2013) (citing *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001)); *Tompkins v. Holman*, 2013 WL 1305580 (S.D. Miss. Mar. 26, 2013).  "The requirement of exhaustion applies regardless of Plaintiff's opinion on the efficacy of the institution's administrative remedy program."  *Nealy v. Moore*, 2013 WL 6230107, *3 (S.D. Miss. Nov. 30, 2013) (citing *Alexander v. Tippah Co.*, 351 F.3d 626, 630 (5th Cir. 2003)).

The LRCJC has a grievance process which is set out in the facility's Inmate Handbook, attached as Exhibit A to Capt. Mataya's affidavit.  [82-2]  VanSlyke acknowledged receipt of copies of the handbook on three separate occasions between March 30, 2016 and April 13, 2017 before he signed his complaint on May 19, 2017.  [82-2, pp. 337, 318, 274]  The administrative

process requires that an inmate first attempt to solve the grievance with the correctional officer, and if unsuccessful, the inmate must submit a grievance form to the shift supervisor within 72 hours of the incident.   The grievance form is directed to the department head for investigation.  If the inmate is dissatisfied with the results of the investigation, he may appeal the decision to the grievance committee.   If the inmate is not satisfied with the results of the grievance committee he may appeal to the captain, and if he is dissatisfied with the captain's decision, he may appeal to the jail administrator or his/her designee.   [82-2, pp. 16-17]   According to Mataya's affidavit, a 2017 revision of the handbook eliminated the grievance committee from the appeal steps which now are to the department head, then the captain and then the jail administrator.   [82-2, p. 2]   Grievances may also be submitted via electronic kiosk.   VanSlyke's records show he has filed frequent grievances and requests during his stays at the jail without appeals, and Mataya avers VanSlyke did not complete the administrative process appeal steps as to any grievances filed against Flowers, Mataya, D'Arcangelo, Wayne, Burnett, Barton or Sheriff Alison.   In fact, his grievance regarding Barton's shoving him (which he alleges Mataya witnessed) and extending his lockdown time is dated May 31, 2017.   [82-2, p. 228]   This was *after* VanSlyke signed his complaint on May 19, 2019 and *after* the complaint was filed on May 30, 2017.   From the evidence presented, the undersigned finds VanSlyke did not exhaust administrative remedies on his claims before he filed this lawsuit.

Municipal liability

A local government can be held liable under § 1983 when its official policies or customs subject a person to deprivation of rights in violation of the Constitution.   *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978); *Connick v. Thompson*, 131 S.Ct. 1350, 1359 (2011).   "[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory."   *Id.*   To state

a claim against Pearl River County under § 1983, VanSlyke was required to allege (1) the existence of a policymaker, and (2) an official policy or custom (3) which is the moving force behind a constitutional violation. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). VanSlyke makes no such allegations in this case; he claims only that the individual defendants work for the County and the County owns the jail. This does not suffice to state a claim against the County.

Lack of personal involvement

The only facts VanSlyke alleges as to Officer Wayne are that Wayne was there when another officer put him in the restraint chair; he testified at the hearing he could not remember the incident which involved Officer Wayne. [82-1, p. 41] Nothing before the Court indicates Wayne occupied any supervisory position at the jail, but even if he did, "There is no vicarious or *respondeat superior* liability of supervisors under section 1983." *Rios v. City of Del Rio*, 444 F.3d 417, 425 (5th Cir. 2006); *Oliver v. Scott* , 276 F.3d 736, 742 and n.6 (5th Cir. 2002). VanSlyke alleges no personal involvement by Alison in any of the incidents upon which his constitutional claims are predicated; his own testimony is that he sued Sheriff Alison simply because Alison is in charge of the jail. Such an allegation fails to present the requisite basis for § 1983 liability. VanSlyke makes only conclusory allegations that Major Flowers ignored his grievances, retaliated against him, did not rescind the charge made against his account for damaging county property, and denied his appeals on disciplinary decisions. VanSlyke fails to identify any particular grievance, and in any event Mataya's affidavit establishes VanSlyke never appealed any grievance about Flowers. An inmate has no "federally protected liberty interest" in having his grievances investigated or resolved to his satisfaction. *Geiger v. Jowers*, 404 F.3d 371, 373-374 (5th Cir. 2005); *Mahogany v. Miller*, 252 F. App'x 593, 595 (5th Cir.

2007); *Morris v. Cross*, 476 F. App'x 783, 785 (5th Cir. 2012).    Conclusory allegations do not suffice to state a valid § 1983 claim for retaliation; a prisoner claiming retaliation must allege a specific constitutional right, the defendant's intent to retaliate against him for his exercise of that right, a retaliatory adverse act, and causation.   *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008).  VanSlyke has presented nothing to show that Flowers was personally involved in disciplinary actions against him or in any of the incidents he claims violated his rights, and his conclusory allegations are insufficient to create to a real controversy regarding material facts. The same holds true for his conclusory allegations of retaliation by Barton, Mataya and D'Arcangelo.

　　　VanSlyke does not allege any of the movants were directly involved in or responsible for his medical/mental care at the jail.    Rather, his medical complaints are directed at medical personnel, and have been fully addressed in earlier Reports and Recommendations [74], [81] finding VanSlyke failed to establish the deliberate indifference required for imposition of liability under § 1983.    As noted in those documents, VanSlyke's medical records demonstrate that his medical complaints (back pain, genital warts, stomach problems and a boil), were not ignored, but were attended to by medical personnel.    The District Court has adopted those Reports and Recommendations and dismissed Nurse Robin West and Dr. John Montgomery from the case. [79], [90]    That VanSlyke disagreed with the treatment he received, or wanted different or additional treatment does not equate to the deliberate indifference required for a constitutional violation.   *Gobert*, 463 F.3d at 346; *Jenkins v. Lee*, 84 F. App'x 469 (5th Cir. 2004); *Sanders v. Westfield*, 2012 WL 930893, *1 (S.D. Miss. March 19, 2012).    To establish deliberate indifference, a prisoner must show that the defendant "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."    *Domino v. Texas Dept. of*

*Criminal Justice*, 239 F.3d 752, 726 (5th Cir. 2001) (citing *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).  VanSlyke has made no such showing; he admittedly received treatment for his medical complaints, but disagreed with the treatment.

Defendants have presented additional grounds for summary judgment of VanSlyke's other claims, in addition to being unexhausted.  VanSlyke's excessive force claims against Liz Barton for shoving him, and Tanisha Burnett for placing him in a restraint chair are unsupported by evidence that the actions taken by the officers were objectively unreasonable under the facts and circumstances surrounding those alleged incidents.  The affidavits of Barton and Mataya refute his allegations about shoving.  In fact, Barton filed an incident report regarding the incident on May 30, 2017, and VanSlyke was found guilty of threatening an officer and placed in lockdown for an extra two weeks.  [82-2, pp. 387, 228]  VanSlyke's claim that Mataya failed to intervene to protect him from Barton's use of excessive force is subject to a deliberate indifference standard under which VanSlyke was required to show Mataya knew Barton posed an excessive risk to VanSlyke's safety and deliberately disregarded that risk.  *Oby v. Sander*, 2015 WL 4496426, at *3 (N.D. Miss. July 23, 2015) (citing *Longoria v. Texas*, 473 F.3d 586, 592 (5th Cir. 2006)).  Mataya's affidavit establishes that on May 30, 2017, he did not see "Barton or any other officer push and/or use any excessive force whatsoever on Mr. VanSlyke."  [82-2, p. 3] Absent evidence that Mataya was aware of a substantial risk of serious harm, VanSlyke cannot establish that Mataya was deliberately indifferent to such a risk.  See *Farmer v. Brennan*, 511 U.S. at 837 (1994); *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (bystander liability requires a showing that the bystander knew a fellow officer was violating an individual's constitutional rights, had a reasonable opportunity to prevent the harm and chose not to act).

VanSlyke has presented neither any facts about Burnett placing him in the restraint chair,[4] nor any evidence or authority holding that use of the chair equates to excessive force.

VanSlyke's allegations regarding lack of recreation/exercise while he was on lockdown and lack of opportunity to practice his religion are also refuted by Mataya's affidavit which states that while he was lockdown, VanSlyke "was always given an hour outside of his cell to shower and have time for recreational activities;" that there is a common area in the lockdown area with room for indoor recreational exercise; and that the cells in lockdown are also large enough for exercise. Inmates have no absolute right to outdoor recreation. *Green v. Ferrell*, 801 F.2d 765, 771-772 (5th Cir. 1986. Mataya further avers that Bibles, reading materials, and access to a Chaplain are available to inmates in lockdown who fill out a request for them, but Van Slyke filed no such a request. [82-2, pp. 2-3]

With respect to VanSlyke's deprivation of property claims, it is well settled that neither negligent nor intentional deprivation of prisoners' property by state officials violates the Due Process Clause of the Fourteenth Amendment so long as there are adequate state post-deprivation remedies for the loss. *Hudson v. Palmer,* 468 U.S. 517, 533 (1984). Under the *Parratt/Hudson* doctrine[5], a state actor's random and unauthorized deprivation of a plaintiff's property does not result in a violation of due process if the state provides an adequate post-deprivation remedy. *Myers v. Klevenhagen,* 97 F.3d 91, 94 (5th Cir. 1996); *see also Marshall v. Norwood*, 741 F.2d 761, 763-764 (5th Cir. 1984); *Becerril v. Gunnels*, 2011 WL 4729839, at *6 (S.D. Tex. 2011) . Mississippi provides post-deprivation remedies for civil IFP litigants which satisfy due process.

---

4 VanSlyke's records refer a September 26, 2016 incident report bearing Cpl Burnet's name stating VanSlyke was cursing and screaming in the hallway as he was escorted to the front to be placed in the restraint chair for flooding his cell by plugging the toilet with a shirt-wrapped book. [82-2, p. 283]

5 *Parratt v. Taylor,* 451 U.S. 527 (1981) and *Hudson v. Palmer,* 468 U.S. 517 (1984).

*Harbin v. Epps*, 2013 WL 4432155, at *3 (S.D. Miss. 2013) (citing *Nickens v. Melton,* 38 F.3d 183, 185 (5th Cir. 1994)).

VanSlyke's allegation that Officer D'Arcangelo opened his mail does not state a constitutional violation, and he has presented no facts indicating the handling of his mail infringed upon his access to courts or violated his First Amendment rights. While inmates have a First Amendment right to send and receive mail, "it is clear that this right does not preclude prison officials from examining mail to ensure that it does not contain contraband or address matters, such as escape plans or other illegal activity, that may impact upon the security of the prison environment." *Lavergne v. Cain*, 2017 WL 3885511, at *3 (M.D. La. August 10, 2017) (citing *Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir. 1993)). While "arbitrary censorship" is prohibited, "[F]reedom from censorship is not equivalent to freedom from inspection or perusal." *Wolff v. McDonnell*, 418 U.S. 539, 576 (1974). Inspection of outgoing mail does not appear to be a violation of an inmate's constitutional rights. See, *Boydston v. Blankenship*, 2014 WL 2980760, at *1 (N.D. Tex. Jun3 11, 2014).

Finally, VanSlyke alleges he was denied legal assistance and a speedy trial in his criminal cases. There is no dispute that he was appointed counsel in his criminal cases. He testified he wrote letters to the Pearl River County Circuit Clerk inquiring about the identity of his lawyer which he says the Clerk denied receiving, and that he encountered problems with access to a law library, but he alleges no actual injury as a result of these events. [82-1, p. 9]. An action under § 1983 is not the proper vehicle for asserting a claim of denial of speedy trial. *Hall v. Dauterive*, 2010 WL 5559759 (W.D. La. Nov. 4, 2010). Furthermore, VanSlyke testified he has pled guilty to the criminal charges against him. Not only has VanSlyke failed to present any evidence that jail officials were responsible for enforcing his right to a speedy trial, a voluntary

and unconditional guilty plea waives all non-jurisdictional defect claims, including the right to speedy trial. *United States v. Cruz*, 455 F. App'x 508, 510 (5th Cir. 2011).

## RECOMMENDATION

Based upon the foregoing, the undersigned recommends that the motion for summary judgment be granted as to all movants for Plaintiff's failure to exhaust administrative remedies prior to filing suit. Additionally, the undersigned recommends that Pearl River County be granted summary judgment for Plaintiff's failure to sufficiently plead a municipal liability claim; and that Wayne Heath, Sheriff David Alison and Major Julie Flowers be granted summary judgment for Plaintiff's failure to plead sufficient facts upon which imposition of liability under § 1983 might rest.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Following service of a Report and Recommendation (R&R), a party has 14 days to file written objections to the R&R. The objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. The District Court need not consider frivolous, conclusive, or general objections. Opposing parties have seven days from service of objections to respond or to notify the District Judge they do not intend to respond to the objections. Failure to timely file objections precludes attack on appeal of any proposed factual finding or legal conclusion accepted by the District Court, except on grounds of plain error. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Signed, this the 29th day of July 2019.

/s/ *Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE